FILED

2015 Jun-01  AM 11:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **MONICA M. WOODARD,** ) | |
| **o/b/o M.K.M.B.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case Number 2:14-cv-643-SLB** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff M.K.M.B., a minor child born in 1998, filed an application for supplemental security income ("SSI") by and through her step-mother, Monica Woodard, on March 16, 2011. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on March 16, 2011. (R. 60.)[1] Her application was denied by the Social Security Administration ["SSA"], (R. 61), and plaintiff subsequently requested a hearing before an Administrative Law Judge ["ALJ"], which was held on March 5, 2013, (R. 29). After the hearing, the ALJ found that plaintiff was not disabled. (R. 23.) In light of this finding, the ALJ denied plaintiff's request for SSI on April 12, 2013. (R. 24.)

---

[1] Reference to a document number, ("Doc.___"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.___").

On May 3, 2013, plaintiff petitioned the Appeals Council to review the ALJ's decision, (R. 5), and on February 20, 2014, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security, (R. 1). Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on April 9, 2014. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. <u>DISCUSSION</u>

**A. THE THREE-STEP EVALUATION**

The definition of child's SSI disability provides that a claimant under the age of eighteen shall be considered disabled if the claimant has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity." 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings). The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924.

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b).[2] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 416.924(b).

The ALJ found that plaintiff had not engaged in substantial gainful activity since March 16, 2011, the application date. (R. 14.)

---

[2] The Regulations define "substantial gainful activity":

   (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

   (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

   (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

### 2. Severe Impairments

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.924(a). For an individual who has not attained the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.

The ALJ determined that plaintiff had severe impairments of "post traumatic stress disorder (PTSD) [and] depressive disorder not otherwise specified."  (R. 14.)

### 3. The Listings

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are functionally equivalent in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926a(a). For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A child has a "marked" limitation in a domain when her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. 20 C.F.R. § 416.926a(e)(2).  A child has an "extreme" limitation in a domain when her impairment(s) interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing or that functionally equaled a listing. (R. 14.)

## B. MS. WOODARD'S CLAIMS

Plaintiff argues that (1) the ALJ did not properly consider all medical evidence in determining plaintiff's severe impairments, (2) the ALJ's finding that plaintiff did not meet listing 112.08 is unsupported by substantial evidence, (3) the ALJ did not properly consider the evidence in determining whether plaintiff's condition functionally equaled a listing under the domains of interacting and relating with others and attending and completing tasks, and (4) the ALJ ignored the medical opinion of Dr. Jon Rogers without providing a sufficient

explanation. (Doc. 11.) Upon reviewing the record and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

### 1. Determination of Plaintiff's Severe Impairments

Plaintiff argues that the ALJ erred by not treating plaintiff's bipolar disorder as a severe impairment. (Doc. 11 at 12.) Plaintiff also contends that the ALJ's failure to discuss plaintiff's bipolar disorder shows that the ALJ failed to thoroughly evaluate the evidence of record. (*Id.*) At step two, the ALJ found plaintiff's bipolar disorder to be a nonsevere impairment, stating that Dr. Jon Williamson ruled out bipolar disorder in 2006, that he noted that plaintiff had "Bipolar Disorder, by history" in 2011, and that a therapist reported that plaintiff was "displaying classic bipolar behavior, but did not specifically diagnose bipolar disorder." (R. 14.)

Plaintiff contends that additional evidence shows that she was diagnosed with bipolar disorder. (Doc. 11 at 12.) For example, on both July 25, 2006 and March 15, 2007, Cynthia Fuller, a certified registered nurse practitioner ("CRNP") operating Harmony, LLC in collaboration with Dr. Jon Williamson, wrote "Bipolar I" in her medical notes, (R. 239, 287), and Dr. Williamson acknowledged that plaintiff "was previously diagnosed with Bipolar Disorder," and stated that "[t]he patient has been diagnosed with Bipolar Disorder and placed on Lamictal, Wellbutrin and Catapress at various times in the past," (R. 343).

While defendant is correct that the notes taken by Cynthia Fuller do not establish an impairment, since a CRNP is not an acceptable medical source whose opinions may provide

evidence to establish the existence of an impairment, *see* 20 C.F.R. § 416.913(a), Dr. Williamson's statements show that plaintiff received a valid diagnosis for bipolar disorder, although that diagnosis does not appear to be in the record. As defendant argues, however, a valid diagnosis does not establish limitations from the impairment. (Doc. 12 at 5); *see Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."). Furthermore, "even if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Id.* at 825.

> Defendant also contends:
>
> Notably, that the ALJ found at the third step that [p]laintiff did not have an "impairment or combination of impairments" that met or equaled a listed impairment is sufficient to show the ALJ considered the combined effect of [p]laintiff's impairments[.] [(R. 14.) *See Wilson v. Barnhart*], 284 F.3d 1219, 1224-25 (11th Cir. 2002); [*Hutchinson v. Astrue*], 408 F. App'x 324, 327 (11th Cir. 2011).
>
> Plaintiff failed to show that her alleged bipolar disorder, whether severe or not severe, caused limitations in addition to those from the mental impairments the ALJ found to be severe. [*See Sanchez v. Comm'r of Soc.*

*Sec.*], No. 12-11762, 2013 WL 490029, at *4 (11th Cir. Feb. 8, 2013) (noting even if it was error to exclude Plaintiff's personality disorder at step two, ALJ considered the condition at other steps; and claimant failed to show limitations beyond those manifested by other severe mental impairments). Plaintiff does not contend her personality disorder caused a particular mental limitation the ALJ did not consider.

(Doc. 12 at 6.)

The court finds no reversible error regarding the ALJ's determination of plaintiff's severe impairments and finds that the ALJ properly considered plaintiff's bipolar disorder in evaluating plaintiff's severe and nonsevere impairments.

### 2. Listing 112.08

Plaintiff alleges that substantial evidence does not support the ALJ's finding that plaintiff's impairments did not meet or equal a listing. (Doc. 11 at 13.) Specifically, plaintiff contends that the ALJ erred in not finding that plaintiff met listing 112.08. (*Id.*) The ALJ did not explicitly evaluate listing 112.08 but found, rather, that plaintiff's impairments did not meet or medically equal any listed impairment. (R. 14.) "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Listing 112.08, in conjunction with 112.02, provides as follows:

> Personality Disorders: Manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness.

9

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior, associated with one of the following:

      1. Seclusiveness or autistic thinking; or
      2. Pathologically inappropriate suspiciousness or hostility; or
      3. Oddities of thought, perception, speech, and behavior; or
      4. Persistent disturbances of mood or affect; or
      5. Pathological dependence, passivity, or aggressiveness; or
      6. Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or
      7. Pathological perfectionism and inflexibility;

AND

B. For children (age 3 to attainment of age 18), resulting in at least two of the following:

      a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

      b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

      c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is

needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff contends the disciplinary actions taken as a result of her behavior at school show that her impairments met listing 112.08. (Doc. 11 at 14.) Plaintiff also argues that her hospitalization in 2011 for suicidal thoughts, along with reports to doctors that plaintiff was suffering from mood swings, poor concentration, and poor impulse control, provide evidence satisfying listing 112.08. (*Id.* at 16.) Defendant responds by stating that,

> [a]s an initial matter, [p]laintiff cites to no specific medical findings to show she satisfied either the A or B criteria[.] (Doc. 11 at 13-16[.]) Instead, she notes her disciplinary record for misbehaving at school and cites to her testimony and subjectively-reported symptoms during a 2011 hospitalization. Contrary to [p]laintiff's suggestion, she cannot establish she met the criteria based on anecdotal evidence and subjective reports uncorroborated by specific medical findings or the results of appropriate standardized testing. Significantly, [p]laintiff does not even identify which of the A criteria and which of the two B criteria she allegedly met, much less point to documented medical findings.

(Doc. 12 at 9.)

Plaintiff has not supported her assertion that she met listing 112.08 with medical findings, and as defendant noted, state agency medical consultants Dr. William Meneese, Dr. Dale Leonard, and Dr. Samuel Williams reviewed the evidence of record and found that plaintiff's severe impairments did not meet or equal a listing. (*See* R. 233-34, 294-95, 314-

15.) The court finds that substantial evidence supports the ALJ's finding that plaintiff's impairments did not meet or equal a listing, including listing 112.08.

### 3. Determination as to Whether Plaintiff's Condition Functionally Equaled a Listing Under the Domains

Plaintiff argues that the ALJ erred in finding that plaintiff's impairments did not functionally equal a listed impairment. (Doc. 11 at 17.) To functionally equal a listed impairment, plaintiff's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d). The ALJ found that plaintiff had a marked limitation in interacting and relating with others, less than a marked limitation in her ability to care for herself, and no limitation in the remaining domains. (R. 18-23.) Plaintiff alleges that she has an extreme limitation in the domain of interacting and relating with others and a marked limitation in the domain of attending and completing tasks. (Doc. 11 at 16-17.) An extreme limitation is one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). A marked limitation is one which "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

### a.    Interacting and relating with others

First, plaintiff argues that she has an extreme limitation in the domain of interacting and relating with others. (Doc. 11 at 17.) To support her argument, plaintiff points to her disciplinary record at school, her suspensions from school for misbehavior, her testimony that

12

she has no friends and does not get along well with her siblings, and her father's testimony that plaintiff has difficulty communicating, that she does not get along with family members other than himself, and that he must go to the school every week to discuss plaintiff's behavior problems with her teachers. (Doc. 11 at 18.) While plaintiff also points to three reports by plaintiff's teachers or school staff stating that plaintiff had an "extreme" limitation in interacting and relating with others, the ALJ did not heavily rely on these opinions, as at least four other educators opined that plaintiff had anywhere from a moderate limitation to no limitation in interacting and relating with others. (R. 18, 205-11.) Because those opinions "are so widely varied and contain no explanation as to why the claimant has the stated limitations," the ALJ properly gave them little weight. (R. 18.)

The ALJ acknowledged plaintiff's behavior problems, noting that after plaintiff was raped by a family member in 2005, plaintiff misbehaved, refused to stay alone, and abused her siblings. (R. 16.) The ALJ also discussed plaintiff's disciplinary record at school, which includes monthly referrals and suspensions from 2010 to 2012. (R. 17.) School records show that plaintiff had problems attending class, used profanity around other students and teachers, and fought with other students. (*Id.*) Nevertheless, the ALJ found that plaintiff had a marked, as opposed to an extreme, limitation in interacting and relating with others. The ALJ noted the lack of mental health treatment from 2006 until 2011. While plaintiff's father explained that plaintiff was on a waiting list for mental health treatment after her counseling sessions

13

ended in 2012, plaintiff does not explain the lack of mental health treatment prior to 2011. (*See* R. 16, 44.)

Additionally, the ALJ relied on plaintiff's mental health treatment with counselor Shannon Crenshaw in 2011. (R. 16.) While the counselor reported signs of depression on April 14, she noted that plaintiff "presented in an acceptable manner" on April 7 and that plaintiff "felt good about her school test scores and had a new boyfriend." (R. 16, 304-05.) Further, in July 2011, plaintiff told State agency examining physician Jon Rogers that she was dating someone and that she had friends with whom she talked, walked, and went skating. (R. 16, 313.) The record also shows that by December 2011, Dr. Khan removed plaintiff from all medication due to her mood and behavior improving and stabilizing without medication. (R. 17, 347.)

Defendant contends that the following evidence also supports the ALJ's decision:

> In 2006 and 2007, [p]laintiff's father reported [p]laintiff had no limitation in her ability to communicate, had friends her own age, and generally got along with her parents, teachers, and other adults. [(R 106, 109, 116, 119.)] In July 2006, examining psychologist Dr. Cynthia Neville opined that [p]laintiff had age-appropriate communication and social skills despite mild to moderate misbehaviors. [(R. 232.)] Later in July 2006, state agency psychologist Dr. Meneese reviewed the available medical and testimonial evidence and opined [p]laintiff had less than marked limitation in interacting and relating with others. [(R. 235.)] At the end of July 2006, psychiatric nurse Fuller noted [p]laintiff was cooperative with good eye contact on exam. [(R. 239, 279.)] In December 2006, Ms. Fuller again noted good eye contact. [(R. 280.)] In July 2007, state agency psychologist Dr. Leonard reviewed the available medical and testimonial evidence and opined [p]laintiff had less than marked limitation in interacting and relating with others. [(R. 296.)]

(Doc. 12 at 11.)

14

The court finds that the ALJ relied on substantial evidence to determine that plaintiff had only a marked impairment in her ability to interact and relate with others.

**b.      Attending and completing tasks**

Plaintiff contends that "the evidence overwhelmingly shows that plaintiff has a 'marked' limitation in the Domain of attending and completing tasks, and therefore[,] is entitled to a finding of disabled." (Doc. 11 at 19.) For example, plaintiff points to her father's statement that plaintiff has difficulty paying attention and that she cannot stay on task on her own. (Doc. 11 at 20; *see* R. 48-49.) The ALJ found that plaintiff had no limitation in attending and completing tasks. (R. 20.)

Defendant contends that:

Substantial evidence in the record, much of which the ALJ noted, supports this finding . . . .  Plaintiff had no mental health treatment between 2006 and 2011 and stopped taking medication in late 2011, which undermines her claim of marked limitations in attending and completing tasks. [(R. 16-17.)]

In 2006 and 2007, [p]laintiff's father reported [p]laintiff independently worked on arts and crafts projects; in 2007, he added that she completed her [homework].[3] [(R. 111, 121.)] In July 2006, Dr. Cynthia Neville noted [p]laintiff could calculate simple addition and subtraction problems, count backward from 10 without difficulty, and spell the word "dog" backwards. [(R. 230.)] She opined [p]laintiff had age-appropriate pace and mild to moderately impaired concentration and persistence. [(R. 232.)] Later in July 2006, Dr. Meneese opined [p]laintiff had less than marked limitation in

---

[3] While defendant states that "in 2007, [plaintiff's father] added that [plaintiff] completed her chores most of the time," (Doc. 12 at 13), plaintiff's father stated in the 2007 Function Report that plaintiff completed her homework but marked that plaintiff did not complete her chores most of the time, (R. 121). Therefore, the court assumes defendant intended to state that, in 2007, plaintiff's father added that she completed her homework.

attending and completing tasks. [(R. 235.)] In June 2007, examining psychologist Dr. John Neville opined [p]laintiff was attentive with adequate concentration. [(R. 291.)] He noted [p]laintiff correctly answered all the administered addition and subtraction problems, counted back from 20 to 1 without error, spelled "stop" backwards, recalled four digits forward and three digits backward, remembered two out of three items after a 5-minute delay, and remembered her past day's activities [(R. 290.)] In July 2007, Dr. Leonard opined [p]laintiff had less than marked limitation in attending and completing tasks. [(R. 296.)]

In May 2011, Ms. Crawford indicated [p]laintiff was at grade level in reading and math skills . . . [and] reported . . . no problems with [p]laintiff's ability to attend and complete tasks. [(R. 143, 145.)] In July 2011, [p]laintiff was able to perform the serial sevens subtraction task and correctly answered two out of three math problems. [(R. 312.)] Later in July 2011, Dr. Williams reviewed the available medical and testimonial evidence and opined [p]laintiff had no limitation in attending and completing tasks. [(R. 316.)] In August 2011, examining psychiatrist Dr. Williamson noted [p]laintiff's attention was good and estimated she had an average IQ. [(R. 344.)] In February 2013, Ms. Cowan indicated p]laintiff had no limitations in attending and completing tasks[, and] two other counselors and [p]laintiff's assistant principal indicated no more than slight or minimal limitation in this domain. [(R. 206-208, 210.)]

(Doc. 12 at 12-14.) Additionally, even though plaintiff's father testified that plaintiff had problems with attention and task completion, he also stated that he was unsure whether plaintiff simply did not feel like completing tasks or whether she was actually unable to complete them. (R. 49.) The evidence of record supports the ALJ's finding that plaintiff does not have a marked limitation in attending and completing tasks.

### 4. Medical Opinion of Dr. Jon Rogers

Plaintiff contends that the ALJ disregarded the opinion of Dr. Jon Rogers without providing an explanation for doing so. (Doc. 11 at 21.) The ALJ discussed Dr. Rogers's

16

report, in which Dr. Rogers opined that the quality of plaintiff's daily activities was normal and diagnosed plaintiff with "PTSD and depressive disorder." (R. 16.)The ALJ also stated that "Dr. Rogers did not issue a medical source statement[,] but his consultative evaluation is consistent with the findings in this opinion[.]" (R. 17.) Dr. Rogers noted several subjective complaints plaintiff made during the examination, and he noted that plaintiff was alert and cooperative, that "[h]er mood appeared normal," that her "[s]tream of talk and mental activity" and speech were all normal, and that her judgment and insight were fair. (R. 311-13.) During the exam, Dr. Rogers diagnosed plaintiff with "Posttraumatic Stress Disorder" and "Depressive Disorder," (R. 313), and under the heading "Implications For Employment," Dr. Rogers opined that:

> [Plaintiff] is not able to function independently. The quality of her daily activities is normal. The medical evidence of record provided by DDS was reviewed and those findings were considered in the overall assessment of the patient. She reported she has friends with whom she walks and talks and goes skating. [Plaintiff] stated she is happy mostly; and is unhappy, "I be aggravated when my brother be aggravating me." She said she has problems "not being able to see my mama and my mama's sister." She reported getting into trouble in school for fighting and hollering at people.

(*Id.*) First, defendant contends, "The ALJ had no obligation to mention Dr. Rogers'[s] notations of [p]laintiff's subjective complaints, as those are not objective medical evidence and should not receive significant weight. (Doc. 12 at 14-15 (citing 20 C.F.R. 416.928, 416. 929; *Phillips v. Barnhart*, 357 F. 3d 1232, 1241 (11th Cir. 2004)).) Defendant also argues that, although the ALJ did not explicitly discuss Dr. Rogers's statement that plaintiff was "not able to function independently," that statement is unqualified, given that Dr. Rogers

17

failed to identify any specific functional limitations. (Doc. 12 at 15.) Additionally, defendant points out that Dr. Rogers's statement under the heading "Implications for Employment" is unclear, as it may simply be an acknowledgment that plaintiff was a minor (thirteen years old at the time) who could not live or work on her own. (*Id.*)

The court notes that the ALJ did not reject Dr. Rogers's opinion but instead stated that "his consultative evaluation is consistent with the findings in this opinion." (R. 17.) The ALJ properly concluded that Dr. Rogers's report, noting plaintiff's cooperation and normal activities of daily living, was generally consistent with the ALJ's findings. Furthermore, defendant is correct that Dr. Rogers's statement that plaintiff cannot function independently is not qualified and is unclear, given the context of the statement, which was written under a heading entitled "Implications for Employment." Therefore, the court finds that the ALJ did not improperly reject Dr. Rogers's opinion, and thus, there is no reversible error.

## IV. <u>CONCLUSION</u>

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for SSI is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 1st day of June, 2015.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

18